LEE BUILDERS SUPPLY CORP., T/A REGAL HOME
IMPROVEMENT CO.

V.

NORMAN WILLIAM COHEN

Record No. 820878

Decided June 14, 1985, at Richmond

Present: All the Justices

*Paul M. Shuford (Mark E. Rubin,* on briefs), for appellant.
*Milton Paul Miller* for appellee.

THOMAS, J., delivered the opinion of the Court.

Norman William Cohen sued Lee Builders Supply Corporation, trading as Regal Home Improvement Company (Regal), in a three-count motion for judgment. Counts I and II alleged breach of a certain commission sales contract. Count III sought punitive damages.

The case was tried by a jury which returned a verdict in the amount of $10,938. The jury did not announce under which count the award was made, but it is clear that punitive damages were not awarded. The trial court entered judgment on the verdict.

Regal contends, in its appeal, that Cohen failed to prove breach of contract. In resolving this issue we will, of course, consider the facts in the light most favorable to Cohen.

Regal was in the home improvement business. Cohen was one of Regal's salesmen. In performing his job, Cohen would visit prospective customers, determine the work to be done, and make an estimate based on a price list prepared and supplied by Regal. In every instance, the estimate exceeded the price list figures. The estimate was known as the job price. According to Regal, the difference between the job price and the list price was profit, and that profit was to be split "50-50" between Cohen and Regal.

In Count I of his motion for judgment, Cohen contended that the price list contained secret profits which were retained by Regal instead of being split 50-50 between Cohen and Regal. According to Cohen, the price list was to include nothing other than the "list cost of merchandise and/or services . . . to the defendant [Regal] plus transportation, direct labor associated with the product, and a reasonable and proper overhead factor."

Based on Cohen's allegations, it was his burden to prove by a preponderance of the evidence that the price list provided by Regal included charges other than for merchandise or services, transportation, direct labor associated with the product, and a reasonable and proper overhead. In our opinion, Cohen failed to make the proof called for in Count I.

At trial, Cohen adduced evidence from customer files produced by Regal. For each file, Cohen made an analysis that showed the difference between Regal's price list figure and the sum of the actual cost of the merchandise and the labor paid by Regal. Cohen contended that he was entitled to one half the difference. For example, on one job listed on a plaintiff's exhibit, the cost of two doors on the Regal price list was $200. The customer file showed the actual price for the doors was $124.30, and the labor associated with their installation was $24. These last two figures totaled $148.30. When the figure of $148.30 is subtracted from the $200 price list figure, the difference is $51.70. Cohen claims he is entitled to one-half this amount.

During Cohen's testimony, the court asked Cohen's counsel how plaintiff had computed overhead. The response from Cohen's counsel was, "We did not, Your Honor. There's nothing on here for overhead at all." The court then asked, "That's not computed in?" Cohen's counsel said, "No, sir." Cohen himself said, "No, sir, never." Cohen's counsel then said that evidence about overhead was in the case from other witnesses.

The other evidence concerning overhead came from two sources. Cohen called as a witness one Howard Eisen, who had worked at Regal for fourteen years from 1964 to 1978. Eisen's tenure at Regal overlapped Cohen's. Eisen rose to the rank of sales manager for Regal. He testified that while at Regal, he learned that Regal used a 25 or 30% overhead figure. In addition, Eisen—who, upon leaving Regal, established his own home improvement company—said that the overhead at his company was 25%. He explained that his overhead figure is added to his costs.

The second source of information was Allan Mullian, the secretary-treasurer of Regal. He went through several of the files relied on by Cohen and explained how the price list figure was calculated. In one example, he used a 30% overhead figure which was added to the cost of materials. In another example, he used a 25% overhead figure which, again, was added on.

■ At no point did Cohen go through each customer file, determine the cost of merchandise or services, add to that the cost of transportation and labor, multiply the total costs by an overhead percentage, and then add together the costs plus overhead to arrive at figures to be compared to the price list entries. Only by such a procedure could Cohen have proved that the Regal price list contained hidden profits.

Cohen sought to handle the overhead item another way. During his closing argument, he suggested that the jury start with the total difference between Regal's price list figures and the cost figures for the goods and services on the individual jobs and simply *deduct* 25% "across the board" to take care of any overhead problem. Regal's counsel complained that Cohen's approach was incorrect. The trial court agreed.

■ The court advised Cohen's counsel that "that formula you've got on the board cannot be used by you in that argument in that fashion because it's mathematically incorrect." The court explained that the error was in subtracting overhead from the differential instead of adding it to cost. The following exchange ensued:

THE COURT: You don't reach the differential and then add the overhead in by subtraction. That's mathematically incorrect.

I've got to say that because it would be terribly misleading about the case for the jury, but that mathematics may not go. It may be simple, but it's not mathematically accurate.
[COHEN'S COUNSEL]: I don't think, Your Honor, with the short amount of time that I can figure it on each job.
THE COURT: It's oversimplification and inaccurate, and I can't allow that impression to be left with the jury.
. . . .
[COHEN'S COUNSEL]: All right. Ladies and gentlemen of the jury, the Court has pointed out to me that I can't use the formula because it's incorrect, and I assume it is; however, I will leave before you the total of the columns, and the columns all add up to $28,775.

The preceding exchange demonstrates that as to the allegations contained in Count I, a key element of proof was missing. The trial court correctly noted that Cohen's approach was wrong.

However, the error did not simply signal some minor problem concerning proof of damages; it signaled a major problem with regard to liability under Count I.

An example will help illustrate the problem. Assume an actual cost of $100 for an item with a list price of $125. The difference there would be $25. Cohen contends that the overhead factor would be taken care of by reducing the $25 by 25%. This would result in a deduction of $6.25, leaving $18.75 of which Cohen claims entitlement to $9.37. Yet, as the trial court noted, Cohen's approach is mathematically incorrect. By a proper procedure, where 25% is added to the actual cost of $100, the result would be $125, the precise amount set forth on the price list. The procedure suggested by Cohen leads to the wrong answer.

■ Under Count I, it was Cohen's burden to prove that the price list contained secret profits. However, he failed to determine the overhead on each job which he analyzed, and the court rejected his effort to subtract a figure which he claimed accounted for overhead. As a result, the jury did not have before it all the evidence it needed to determine whether there was a breach of contract by Regal as alleged in Count I. As the example illustrates, had overhead been added, the price list may have been exactly right. If the price list was correct, then under Cohen's theory in Count I, there was no breach of contract. We hold that Cohen failed to prove what he set out to prove under Count I.

Our inquiry cannot stop with Count I because, in Count II, Cohen asserted another theory of breach of contract. There he alleged that part of his agreement with Regal was that Regal could deduct from the job price not only the price list cost of merchandise and services, but also certain administrative and miscellaneous charges including, but not limited to, "legal fees when required and necessary, building permits, measuring charges, and other miscellaneous charges . . . for the exact amount spent by [Regal] for same, irrespective of any amount stated on the price list."

According to Cohen, Regal breached this part of its agreement by deducting or charging for legal fees where none were spent; deducting or charging for legal fees where they had already been paid by the customer; deducting amounts for building permits in excess of amounts actually paid for same or where no building permits were obtained at all; deducting or charging for the mea-

surement of jobs where no measurements were taken; and deducting miscellaneous charges that were not actually paid.

At trial, Cohen introduced into evidence an exhibit prepared by him which listed each job on which he contended Regal made improper deductions or charges. The exhibit contains line items referring to charges for taking measurements, charges for building permits, and charges for legal fees. We have examined this exhibit and determined that it would support a jury verdict, under the theory advanced in Count II, in the amount of $1,502.50.

The amount supported by the evidence with respect to Count II is well below the amount of the verdict returned by the jury. *See* Code § 8.01-681. We conclude that the excess amount is attributable to Count I, under which, as we demonstrated earlier, there was a failure of proof. Therefore, we will modify the judgment appealed from, affirm the judgment as modified, and enter final judgment for Cohen in the amount of $1,502.50.

*Affirmed as modified.*